IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:03CV556-MU-02

JAMES CURTIS GEORGE,         )
    Petitioner,            )
                             )
    v.                     )            ORDER
                             )
SIDNEY HARKLEROAD, Supt.,    )
and                          )
THEODIS BECK, Dir. Of        )
  North Carolina Prisons,    )
    Respondents.           )
_____)

**THIS MATTER** comes before the Court on petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. §2254, filed November 12, 2003; on the respondents' "Motion For Summary Judgment and Answer . . . ," filed January 29, 2004; and on the petitioner's so-called "Motion In Opposition," filed February 19, 2004. For the reasons stated herein, and for the further reasons stated in the respondents' Supporting Brief, the respondents' Motion for Summary Judgment will be granted; and the petitioner's Petition will be denied and dismissed.

       I.    **FACTUAL AND PROCEDURAL BACKGROUND**

According to the record of this matter, primarily as recounted in the North Carolina Court of Appeals' decision of

1

June 5, 2001, on December 11, 1997 during the early morning hours, Officer Hunter of the Concord (North Carolina) Police Department observed the petitioner as he was driving erratically along Highway 29 in Concord.  See North Carolina v. George, No. 00-457 (N.C.App. June 5, 2001) at p. 1.  Initially, the petitioner stopped the vehicle he was driving and approached the officer without having been directed to stop or to approach.  Id.  However, when the officer observed that the petitioner's eyes were red and glassy, she ordered the petitioner to return to his car and wait for her to approach him.  Id. at 2. The petitioner eventually returned to the vehicle he was driving, but sped away from Officer Hunter.  Id.

Consequently, the officer activated her blue lights and siren, and pursued the petitioner.  Id.  At some point, the petitioner accelerated to about 90 to 100 miles per hour, requiring other officers to join the pursuit.  Id.  During the chase, the petitioner ran three other vehicles off of the road.  Id.

Eventually, the petitioner approached the University area of Charlotte, near the intersection of W.T. Harris Boulevard and Highway 29.  Id.  Instead of stopping for the red light, however, the petitioner proceeded through the intersection and was struck by another vehicle that was properly traveling through that intersection.  Id.  The petitioner's vehicle ultimately stopped when it struck a metal pole.  As a result of the collision, the

petitioner's front passenger died. Id.  The autopsy which was performed on that victim indicated that he suffered from "brain death due to blunt trauma injuries to the head and chest. . . ." Id. at 3.

The petitioner was treated at a local hospital and released into the custody of the Concord police, who initially charged him with possession of a stolen vehicle, felony speeding to elude arrest, and possession of burglary tools.  Id. at 2.  However, on March 15, 1998, a Mecklenburg County grand jury indicted the petitioner on charges of Possession of a Stolen Vehicle, Manslaughter, and felonious Speeding to Elude Arrest.  Id. at 3.  In addition, on July 19, 1999, the petitioner was indicted on the charge of being an Habitual Felon.  Id.  The petitioner pled not guilty to the charges and subsequently proceeded to trial.

During the petitioner's trial, the surviving occupant of the vehicle, Basil King, testified that a couple of nights prior to the fatal collision, he and the petitioner had stolen the vehicle which the petitioner was driving.  Id.  King stated that on the date of the collision, he, the petitioner, and the decedent encountered Officer Hunter while they were traveling to Concord in order to break into a building. Id. King further testified that after the episode when the defendant left the car and began to approach the officer, the petitioner returned to the car and announced that was going to flee.  Id.  King also testified that while they were being pursued, the decedent asked the petitioner

to simply return him to Charlotte; and that both King and the decedent told the petitioner to stop the car. Id. King ultimately testified that the last thing he remembered from the incident was hearing a loud "boom" sound, obviously caused by the collision; and that he had spent three to four days in the hospital being treated for his own injuries. Id.

For his part, the petitioner testified that he did not know that the vehicle he was driving was stolen, but he was aware that his driver's license had been suspended prior to driving the vehicle. Id. at 3-4. The petitioner also testified that on the date of the fatal collision, he and the occupants of the car were riding around, looking for crack cocaine. Id. at 4. However, at some point, the petitioner claims that he decided to drive his passengers to the campus where he had played college basketball, but then got lost due to the foggy weather conditions. Id.

The petitioner further testified that he subsequently noticed that he was being followed by a police car, which is why he stopped and got out of the vehicle to ask if something was wrong. Id. However, the petitioner told the jury that after he returned to the vehicle, the decedent ordered him to take him back to Charlotte, so he tried to flee authorities because he feared for his safety, and because he was aware that the decedent had a large amount of drugs in his possession. Id. The petitioner also testified that within the ten years prior to his trial, he had been convicted of breaking and entering and

larceny; two charges of larceny of an automobile; breaking and entering an automobile; and tampering with an automobile. Trial Tr. at pp. 849-50.

On cross-examination, the prosecutor elicited additional details about the fatal car collision. More critically, the prosecutor asked the petitioner about his March 1989 convictions for possession with intent to sell and deliver a controlled substance and for the sale and delivery of a controlled substance. Id. at 6-7.

However, the petitioner denied both that he had committed those offense or sustained either of the convictions. Instead, the petitioner claimed that he had been a drug user during the period in question, and that the substances which were believed to be cocaine merely was baking soda. Id. at 7. In addition, when asked whether he had been convicted of obtaining property by false pretenses, the petitioner did not respond directly, but instead talked about an occasion when someone had broken into his own car. Id. at 8.

Perhaps not surprisingly, after considering the evidence, the jury found the petitioner guilty of Possession of a Stolen Vehicle, Involuntary Manslaughter, and felonious Speeding to Elude Arrest. Id. at 4. The petitioner was also found to be an Habitual Felon. Id. Thus, following his trial, the Superior Court of Mecklenburg County sentenced the petitioner to two consecutive terms of 93 to 121 months imprisonment. Id. The

petitioner timely appealed those matters to the North Carolina Court of Appeals. Id.

On appeal, the petitioner argued that the trial court had erred in refusing to give his requested instruction on compulsion, duress or coercion; that the trial court had erred in admitting evidence of certain of his prior convictions which he had sustained more than ten years earlier; and that the trial court had erred in its instruction on Speeding to Elude Arrest. Id. at 5-9. However, the State Court of Appeals found "no error" in the petitioner's proceedings and, therefore, affirmed his convictions and sentences. Id. at 11. On July 19, 2001, the State Supreme Court denied the petitioner's Petition for a Writ of Discretionary Review.

Thereafter, on September 5, 2001, the petitioner commenced his pursuit of collateral review in the State Court with a Motion for Appropriate Relief. After such Motion was denied, the petitioner continued to pursue collateral review until September 24, 2003, when the State Supreme Court denied his final Petition for a Writ of Certiorari.

Consequently, on November 15, 2003, the petitioner filed the instant federal Habeas Petition. By the instant Petition, the petitioner first argues that his Habitual Felon conviction was obtained in violation of his privilege against self-incrimination in that he was "placed" on the stand and questioned about certain prior convictions. Second, the petitioner claims that his

convictions were obtained in violation of his protection against Double Jeopardy due to the trial court's having instructed the jury on <u>involuntary</u> manslaughter, when he was actually charged with manslaughter, and due to the trial court's reliance upon the same offenses to calculate his sentence on the Habitual Felon conviction as the prosecutor used to establish his status as an Habitual Felon. Third, the petitioner claimed that his right to due process was violated due to the prosecutor's failure to include a current predicate felony in the Habitual Felon indictment.[1]

On January 29, 2004, the respondents filed their combined Answer and Motion for Summary Judgment. By that document, the respondents challenge the factual bases of the petitioner's claims, and argue that he is not entitled to any relief on those matters. More particularly, the respondents argue that after the petitioner testified concerning his convictions on direct examination, the State was entitled to impeach his credibility by questioning him about additional convictions which he failed to mention. The respondents also argue that the Habitual Felon indictment referred to convictions which were different from those upon which the trial court relied in calculating the petitioner's offense level. Last, the respondents contend that

---

[1] In addition to these claims, the petitioner's Petition also set forth a claim of ineffective assistance of counsel, presumably against trial counsel. However, by his subsequently filed Motion in Opposition to the respondents' Motion for Summary Judgment, the petitioner announced that he "abandon[ed] that] contention."

the Habitual Felon indictment is not fatally flawed because it did not have to refer to any of the offenses with which he then was charged because State law expressly omits such a requirement.

On February 19, 2003, the petitioner filed his Motion in Opposition, primarily arguing that the State's cross-examination violated both the State and Federal Rules of Evidence.  The petitioner also asserts that the charges of manslaughter and involuntary manslaughter are distinct; therefore, trial court's instruction on involuntary manslaughter constituted an impermissible amendment to his charge.  In addition, the petitioner contends that State law does require the State to list one current predicate felony the Habitual Felon indictments.  The Court has carefully reviewed the foregoing matters along with the relevant federal legal precedent, and has determined that the petitioner cannot prevail in the instant case.

## II.  ANALYSIS

### 1.  Standard of review for habeas petitions.

Generally speaking, the standard of review to be applied by the Court to habeas cases is "quite deferential to the rulings of the state court."  Burch v. Corcoran, 273 F.3d 577, 583 (4th Cir. 2001).  Indeed, as the Burch Court noted:

> [p]ursuant to the standards promulgated in 28 U.S.C. §2254, a federal court may not grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court proceedings unless the state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal

> law, as determined by the Supreme Court of
> the United States" . . . ; or (2) "resulted
> in a decision that was based on an
> unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding. . . ."

Id. (internal citations omitted).

The Supreme Court has explained that a State court adjudication is "contrary" to clearly established federal law, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000), quoted in Burch. An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. Therefore, this Court may not issue the writ even if it concludes in its own independent review, that the relevant state court merely made an incorrect or erroneous application of the correct federal principles. Id.

The applicable standard of review is to be applied to "all claims 'adjudicated on the merits,' that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.23d 445, 455 (4th Cir. 1999).

## 2. **The petitioner's claim that he was forced to incriminate himself is factually and legally baseless**.

As has been noted, by his first claim, the petitioner argues that he was forced to incriminate himself when he "was place[d] on the stand and questioned about the three offenses that established his habitual felon status." However, a review of the transcript of the petitioner's trial reflects that it was the petitioner, himself, who chose to take the witness stand. Indeed, contrary to his claims, the prosecutor did not "place" the petitioner on the stand.

Furthermore, as to the questions concerning his prior convictions, it is well settled that once a defendant takes the witness stand to testify in his own defense, he is subject to cross examination, including impeachment by prior convictions. Ohler v. United States, 529 U.S. 753, 757-58 (2000). In the instant case, the petitioner testified concerning certain of his prior convictions on direct examination, potentially giving the jury the impression that he had no other prior convictions. Consequently, the undersigned finds that pursuant to Fed.R.Evid. 404(b), the prosecutor was free to question the petitioner about the existence of those other convictions inasmuch as they, in fact, did relate to elements of the Habitual Felon charge. See United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997) (holding that evidence of prior acts becomes admissible under Rules 404(b) when, among other things, such evidence is relevant

to an element of the offense), cert. denied, 523 U.S. 1101 (1998).

To put it simply, the petitioner took the stand and opened the door to this line of questioning by the prosecutor. Thus, since the prosecutor's questions were limited to whether or not the petitioner had sustained the convictions which were elements of the Habitual Felon indictment, such questions did not violate the petitioner's constitutional rights as alleged.

### 3. The petitioner was not subjected to Double Jeopardy.

By this claim, the petitioner alleges that it was a violation of the Fifth Amendment's Double Jeopardy Clause when he was indicted for manslaughter, but convicted of involuntary manslaughter--an offense for which he allegedly was not indicted. However, this claim is legally baseless and need not long detain the Court.

That is, as the respondents correctly have noted, under North Carolina law, the offense of manslaughter is codified at N.C.G.S. §14-18, which statute breaks manslaughter into two categories, i.e., voluntary and involuntary. Thus, the offense of manslaughter encompasses involuntary manslaughter. In sum, the petitioner was not charged with one offense, then convicted of a different offense as he has asserted.

Nor was the petitioner subjected to double jeopardy based upon how the trial court calculated his prior record level for

the Habitual Felon indictment.  Indeed, contrary to the petitioner's assertions, the Habitual Felon charge listed two of his three convictions as a March 15, 1989 conviction for sale and delivery of a controlled substance, and a February 24, 1995 conviction for felony breaking and entering a motor vehicle. However, when the trial court calculated the petitioner's prior record level, it relied upon the petitioner's March 15, 1989 felony conviction for possession with intent to sell and deliver a controlled substance, and his February 24, 1995 conviction for felony larceny of a motor vehicle.  Therefore, even though two of the convictions which were used to establish the petitioner's Habitual Felon status were <u>sustained</u> on the same dates as the offenses which were used to calculate his prior record level, the convictions all were for different offenses.

### 4. **The petitioner's due process rights were not violated by the Habitual Felon Indictment**.

Finally, the petitioner argues that his right to due process was violated when the State failed to charge a current predicate offense in the Habitual Felon indictment.  In other words, the petitioner contends that the indictment in question was fatally flawed because it did not list a new or pending felony offense as its predicate, but merely set forth his prior convictions as its elements.

Under federal law, in order to "pass constitutional muster, an indictment must (1) indicate the elements of the offense and fairly inform the defendant of the exact charges and (2) enable

the defendant to plead double jeopardy in subsequent prosecutions for the same offense." United States v. Williams, 152 F.3d 294, 299 (4th Cir. 1998). Accord Hamling v. United States, 418 U.S. 87, 117 (1974). Ordinarily, an indictment that tracks the statutory language is sufficient. See Hamling, 418 U.S. at 117.

Further, when a post-conviction or collateral challenge (such as the instant one) is made, the indictment will be "more liberally construed . . . and every intendment is then indulged in support of . . . sufficiency." United States v. Sutton, 961 F.2d 476, 479 (4th Cir. 1992). More particularly, "[v]ariances and deficiencies in state indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985).

A review of the record here reflects that the petitioner is correct that his Habitual Felon indictment did not set forth a pending predicate felony offense. However, there is neither a federal nor state requirement that habitual felon indictments list or otherwise refer to a pending felony in order to be valid. In fact, in North Carolina v. Cheek, 339 N.C. 725, 727 (1995), the State Supreme Court expressly rejected this precise contention. Rather, that Court stated that in order to be valid, an habitual felon indictment need only "set forth the date that prior felony offenses were committed, the name of the state or

other sovereign against whom said felony offenses were committed, the dates that . . . [the] convictions were returned in said felony offenses, and the identity of the court wherein said . . . convictions took place." Id. at 727.

In particular, the Cheek case pointed out that the North Carolina Habitual Felons Act does not authorize an independent proceeding to determine the defendant's status as an habitual felon separate from the prosecution of a substantive felony. Id. Therefore, the Cheek court reasoned that an habitual felon indictment is ancillary to the indictment for the substantive felony, and it need not list such current charge(s). Id.

In the instant case, the petitioner's Habitual Felon indictment did, in fact, set forth the three predicate felonies, along with all of the other pertinent information outlined in the Cheek case. Furthermore, that indictment was presented along with the petitioner's other felony indictments, which charged him with the felonies of possession of a stolen vehicle, manslaughter and speeding to elude arrest. Thus, the petitioner's Habitual Felon indictment was not fatally flawed, and did not otherwise violate any of his constitutional rights.

### III. CONCLUSION

The instant record makes plain that the State court's affirmation of the petitioner's convictions did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law; therefore, that decision cannot be disturbed by this Court. In this case, the

respondent's Motion for Summary Judgment must be <u>granted</u>.

## IV. <u>ORDER</u>

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. That the respondent's Motion for Summary Judgment is **GRANTED;** and

2. That the petitioner's Petition for a Writ of Habeas Corpus is **DENIED** and **DISMISSED.**

**SO ORDERED.**

**Signed: December 19, 2005**

Graham C. Mullen
Chief United States District Judge